3, 5, 4, Reagan Natl Advtsng of Austin v. City of Austin Mr. Horton, you may proceed. May it please the court. Russ Horton here today representing Reagan Natl Advtsng of Austin and also presenting this morning for both Reagan and the intervener, Lamar. I'm going to focus my presentation this morning primarily on the recent Sixth Circuit opinion of Thomas v. Bright. As the court may recall, the decision was rendered actually the day our reply brief was filed and so we did not have the opportunity to fully brief the issue. And since that is, I believe, the most thoroughly reasoned case in this particular area of the law, I'd like to focus my presentation this morning on that in particular. As mentioned in our brief, this case represents the first of its kind in this circuit seeking to apply the Supreme Court standard in the Reed v. Town of Gilbert case. At its core, Reed clarified First Amendment jurisprudence governing sign regulations by requiring a threshold determination in reviewing sign regulation to determine whether the regulation was content neutral on its face looking at the plain language of the ordinance, code, or other regulation without regard for its justification. Put another way, if the message can only be said, spoken, or displayed based upon what it says, then the regulation is not content neutral and must be reviewed under a strict scrutiny analysis. As described in our brief, many authors have written that this was a sea change for sign regulation here in the United States, but it was a change that was recognized by the majority in Justice Thomas, and this is a little confusing, I know, in our presentation because Justice Thomas wrote the Reed case and Thomas v. Bright is now the most reasoned case on that, so I'll try to be clear when I make reference. But Justice Thomas, in the majority opinion of Reed, makes it clear that using this standard, many well-intentioned, well-reasoned, well-justified sign codes that might be perfectly reasonable ways to regulate signs must nevertheless fall under this new standard. Here, the city of Austin has a sign code that defines on and off-premise in a content non-neutral or a content regulatory way. Are we required to look at both of the ordinances to decide this case, the prior one and the current one, or are you just seeking relief under the current one? The permit applications that are subject to this particular challenge is under the prior code. So we only look at the prior code? I believe that is correct, Your Honor. So what relief would you get, then, if you were to prevail? If the court determines, as we believe the court should, that the prior sign code was not a content-neutral regulation, then the prior language must fail as being a violation of the First Amendment. Then what? What relief do you get? The remedy, it seems to me, would be that if the basis stated by the city for denying the permits was a constitutionally suspect or constitutionally impermissible regulation, then the permit should be granted either or denied based upon some other justification, or if there is no other justification, it must be granted. But we wouldn't grant or deny a permit. So what relief would you get from this court? This court, as we said in our prayer, Your Honor, would be to remand the case to the trial court for further determinations that is consistent with the ruling of this court. Okay. What if we disagree and think it's because the prior code has now been supplanted by the new one that we are not to consider the prior one and we're only to consider the new one? What's weird to me is you seem to think that makes the case moot, and the city seems to think it doesn't, which seems like the exact opposite of what we would expect you all to be arguing. So assume arguendo that we are not going to consider the prior code and only the current one. Tell me whether or not that hurts or helps you. Sure. We don't take the position that this is a moot issue. In fact, as we cite in our brief, the vested rights statute, Section 245 of the local government code in Texas, requires that when a permit is submitted in proper manner, and in this case the city did not challenge the form of the permits as being improper, when the permits are submitted, any sort of regulation or entitlement on real estate, when it's submitted to a regulatory body, a city, in a proper manner, then a vested right vests at that moment, and therefore that permit has to be reviewed based upon the then on the books code, ordinance, and regulation. That's not my question. I said what if we disagree with that premise? Well. Do you think the current statute is unconstitutional? The way the city changed. I'm sorry, current code. Current ordinance. The way the city changed this I think could still be subject to challenge. It's not fully briefed in our thing. What the city did in this particular case in an attempt to make the definition of on and off premise as a non-content based, they didn't actually go that way at all. What they simply did is add a modifier at the end of the definition of off premise to say or other commercial speech. But it doesn't tell you whether it like the word persons is not a commercial. So the modifier doesn't modify every item in the series. And so if the first one is constitutionally infirm, the second one is also constitutionally infirm. I believe that's correct. I believe that's correct. Because it's or other commercial when the other items in the series are not commercial. I agree. And what I believe the city was attempting to do was to try to rather than reconfigure their code as the state of Texas has done in a recent challenge to the Higher Beautification Act in Texas and make it simply locationally based, I think what the city attempted to do in this particular case is try to, with that single modifier, tap into commercial speech type regulations. But, again, I think the court is exactly right. In this particular case, I think the prior and the existing code, because it regulates non-commercial speech or individuals or persons that are attempted to communicate for activities that take place not only at the location of the sign but somewhere else, I think the same challenge. Well, on the city point side, it didn't change the digitizing issue, which seems to be your main concern here is this digitizing issue. And so that doesn't seem to have been changed, and, therefore, that would not be moot. I agree, Your Honor. I agree. So it's not moot either way because you either should be grandfathered under the old ordinance and get analyzed under that one because that's when the permits were, or because the new ordinance also has the same allegedly problematic elements. I agree. I agree. And in this particular case, as I think the city, and I'm going to speak to the prior code, but as I've now pointed out, the only modification to the prior definitional code was this addition of or other commercial speech. The prior code, as the city legal department itself recognized in the record before this court, in their memorandum to the planning commission recognized after the Reed decision that the existing sign code, the sign code in place at the time Reed came down and at the time these permit applications were made two years after Reed was rendered, that the sign code at that time was not content neutral. And, indeed, that is the reason why the city, as they recognized or as they admitted in the record before this court, needed to change their code. In this particular case, the city defined off-premise signage in a particularly content non-neutral or content review way by saying it applied to any sort of advertising of a business, person, activity, good, product, or services not located on the site where the sign is installed or that directs a person somewhere else. By its very nature, that definition is not a content neutral definition of the plain language. How does that work when the signs are changing? You know, if a school has a sign and it could say, exams start Tuesday, and that would be on-premises, but if they said, come to our car wash at Joe's BBQ to raise money for the school club, it would not be. So how does that work if the text of the signs are changing over time? Because the signs don't just stay dormant. In fact, you're selling to different people in your model, and your signs will change. Exactly. And what the court points out, the digital nature of these particular sign applications, the digital nature of the signs that we're talking about simply speeds up the speed at which the text can change. And what the court points out is actually, I think, a regulatory issue that the city is dealing with now. The city in Austin actually has a large number of on-premise signs that have been converted to digital. There's a great deal of digital signage throughout the city of Austin, and there have been instances that it's not before the record of the court, but instances where on-premise signs are being used to advertise events away from the actual location. That would, I think, technically be a violation of the code as it is right now if the code were constitutional. And that is exactly what happens and can happen on a pretty regular basis. If a signed copy in these digital contexts can change several times a minute, several times an hour, then you could have instances of that occur, and it seems to me if there was a violation and the regulation was constitutionally acceptable. One is allowed to advertise off-premises, and one is not, because you can't really control whether a digital sign is going to be saying something about the off-premises if it's—I mean, do you see what— I do, Your Honor. If the court determines that this sort of distinction between on and off is a content-based restriction, then I think it would allow both on and off-premise to advertise freely in all directions. And I think from the standpoint of constitutional review, that's the appropriate remedy to give in this particular situation. Do you want to talk about the Thomas case that we sidetracked you from talking about? Well, what I was going to say, Your Honor, if you look at Thomas— and I want to point out, had Thomas come down merely a couple of days earlier, I might have written a slightly different brief. But as we pointed out in our particular case, many had real difficulty in the Reid case with Justice Alito's exemplars in his concurrence, because one of the exemplars he gives is on- and off-premise regulation. And one of the authors that I pointed out to the court in my brief was a note author in the Harvard Law Review that said that that rendered Justice Alito's opinion irreconcilable with the majority. The thing about Thomas v. Bright is they, in fact, took that exemplar, analyzed it, and harmonized it appropriately with the majority. As Thomas pointed out in their decision—and Thomas, I should say, dealt with a sign regulation. It was the Highway Beautification Act Implementation Statute in Tennessee that, although technically it was different than the city of Austin, it was structured differently. There's a general prohibition on all signs, an exemption on on-premise, and then an exemption to the exemption that has very similar effects to the city of Austin regulation here. And in the Thomas case, citing Justice Alito's concurrence, what the court successfully did is harmonize that what Justice Alito was doing was simply talking about perhaps—he doesn't really explain what he was meaning in his exemplars— but talking about a locational regulation. In fact, other examples in his exemplars talk about those kinds of regulations. Perhaps, although the court in Thomas didn't discuss this, perhaps what Justice Alito was talking about was using the on-premise and off-premise in a common term-of-art way, as the court did in Metro Media. And as this court may recall, the Supreme Court of Metro Media dealt with sign regulations, but under a sign code or a sign ordinance that made it applicable only to commercial speech. Where are these off-premises signs? Are they on some sort of private property? How does that work? The off-premises signs, where are they located? How does that work? Generally, off-premises signs are located under the regulations for— many of these signs are regulated both by TxDOT and by municipalities and basically have to be adjoining commercial property on a commercial district or on a particular area. So they're on private commercial property? Correct. They're not in public easements or anything? That is correct. Private commercial property. So why can't you get the permit by advertising for the commercial property where it's adjoining and then change the sign immediately? Well— I'm just wondering because if you can do that as a private person, if the school can do that, then why can't you get the permit which is advertised for the business for a little while and then change the— And this particular— Because you just need to convert it over, and then once it's converted— I don't understand why it can't be solved practically. I understand, Your Honor. And perhaps there was some suggestion at one point, I know, in this case of— I don't remember if it was the trial court or whatever asked the question, why don't you just do it, put up the permits, and let the city come cite you? And again, my client's selection was not to seek forgiveness but to actually seek permission under the code during this two-year window after— My question does not violate the rule. My question is you could advertise for the business that the property is on for a short time. Sure. Let me say, just so there's not confusion here, not every landowner that leases, sells, or whatever allows signs to go on their property would necessarily be involved in a commercial enterprise. Right, but it could be Joe and Sarah live here. Sure. Or we like enchiladas or whatever they want to say. You know, we are fans of the sports team or whatever they want to say. Sure. I think that's probably better directed at the city. My understanding is under the city code that it would be cited as a violation of the sign code with a potential penalty of $1,000 per day per violation. Once you've changed it. In other words, you start with the advertisement for Joe and Sarah's 30th anniversary and then a month later switch it to McDonald's burgers, then that switch would yield the fine. Would trigger the thing. But it's not triggering it for the other signs. So that wouldn't be another distinction in the way they would be treated. Right. And that is the problem with this particular regulation is it is the disparate treatment that it provides. I'm going to reserve the rest of my time. Thank you. Maybe the city can educate us on this. Good morning. May it please the court, I'm Gray Laird representing Appley, city of Austin. Maybe if you got more roads you wouldn't have so many people with lots of time to look at these signs. That's right. Your Honors, I respectfully submit that the district court here properly denied the relief requested by Reagan and Lamar and properly followed the Supreme Court's opinions in both Metro Media and Reed. We would agree with Reagan and Lamar that Reed did clarify to some extent the law in this area by basically clearing up that there is a two-step test that courts need to use to evaluate signs. The first step is whether it's content neutral on its face. The second step, if the court determines that it's content neutral, then the court looks to the purpose and justification. And there was some unclarity in cases before that, but Reed has now clarified that. And if one analyzes the district court's opinion in this case, you see that the court carefully followed the Reed outline on how to analyze these types of signs. And the court concluded that the Reed decision, although it provided that clarification, the Reed decision did not affect the legality of differences, regulations that make differences in on- and off-premises signs, which came straight from it. But to get there, do we have to do this addition of Alito and Kagan to get to this notion that the off-premise versus on-premise distinction is still viable? I don't think we do, Your Honor. I think certainly the concurrences help, but the terms of Reed itself state that in order to be content neutral, the regulation basically cannot make distinctions based on the topic or the idea or the message of the sign. But don't you have to read the sign to know if it's Joe and Sarah's anniversary or McDonald's burgers? Yes, Your Honor. You do have to make that distinction. That sounds like content to me. If I can't read English, I can't even figure out whether the sign's violating it versus if I can't read English, I nonetheless can tell the sign is bigger than two-by-two or has a purple coloring or whatever other regulations you might have. That's correct, Your Honor. But we would submit the district court here found and other cases have held that a cursory examination that sign officials make in order to determine whether the subject of the sign is located at that particular location does not actually amount to a determination of whether or not of the topic and the idea. Okay, what if Sally has a sign in front of her house and she says, Sally makes quilts here and she sells them at the quilt shop 3200 Main Street. So it's both. And so what happens then? Well, I think there are cases where it could be both. And, well, in that case, I think that would generally be considered an on-premises sign. And I would point out— I mean, look, you have to think and analyze. But what were you going to point out? Yes, Your Honor, but you're still actually evaluating the location of the sign and what's advertised on the sign. These would be the message. And not actually the specific. It's more of a general subject matter. It is a specific thing. What if it says, you know, Barbara and Tom love Whataburger? What is that sign? Well, that's certainly a non-commercial sign. And I would point out— No, and it has a big picture of a Whataburger logo on it. And Whataburger wants to put that in Barbara and Tom's yard. And Barbara and Tom are thrilled about that. Well, I would point out, Your Honor, that any message that is, in this case, that is placed on one of Reagan's billboards or Lamar's billboards would be permitted by the city of Austin. There's no evidence in the record that any message, whether commercial or non-commercial— Because they're grandfathered? Yes, exactly. So much about this digitizing. Yeah, they can't digitize. They're getting behind the times. Everybody's digitizing. It's easier to change the message. It's cheaper. It's easier to maintain. That's correct. And we would fall back, go back to the Metro media analysis, that local cities, local governments, and the legislators can make a reasonable determination to protect public safety and aesthetics. Well, you can make the whole city of Austin not allowed to digitize. That would work, okay? But here the problem is you are distinguishing based on on-premise versus off-premise on this digitizing. And digitizing makes a big difference if you're selling a billboard because when you can digitize, then you can charge a lot of people versus just the one person that's got their billboard. And the creation of that is much more expensive when you have to go make that big thing and post it up there and you have the people on the ladders and all of that  That's correct, Your Honor. And I still think that Metro media allows that type of analysis and that type of distinction, whether it's the size of the signs, whether it's electric or non-electric. Metro media allows legislators to make that type of distinction. The problem is that it seems that perhaps the city of Austin has not made a distinction but hasn't gone all in and said nobody can get these signs, this type of signs. It's distinguished based upon content of the sign, whether or not you can get the sign or not. And I still don't know whether Barbara and Tom can have that sign or Whataburger have that sign. I'm not clear on the answer to that question. Well, I think under, if they're a grandfathered sign, like all of the signs that are at issue in this country. No, it's a new digital sign. Barbara and Tom have a new digital sign in front of their house. That advertises for Whataburger. That advertises for Whataburger and says Barbara and Tom love Whataburger and has a big Whataburger logo and a meal. Then, Your Honor, I think I would have to agree that if that's the case, and assuming there's not a Whataburger restaurant on their property, then I think that would be a violation of the city's code. Even though it's Barbara and Tom who live in the house and are the ones saying it's a mixed message. We're getting into the content and who the speaker is. That's a quintessential content-based analysis when you say, Who is the speaker? And you say, What are they saying? That is content-based analysis. The regulation still is applied even handedly, though. I guess the other factor would be, well, okay, maybe the homeowners could not advertise for Whataburger, but yet Whataburger is still permitted to advertise at their location. And that's like some of the examples that Reagan and Lamar pointed out in their briefs about the church choir practice. The church could put up a sign and say, Choir practice here, but they could not put up a sign that says, Choir practice at another location. Can they put up a digital sign in the yard that says, Vote for Jennifer Elrod? Yes. I'm not running. That's why I used her, because I didn't want to use the name of someone who might be running. Yes, they could. Okay, so they can do that, and why can they do that? Because there's no evidence in the record that the city has instructed anyone, basically, to take down any type of noncommercial sign on their property. But the digitized rule applies to noncommercial, right? Yes. Y'all said so. I mean, you didn't argue the mootness point in this briefing, but you did in the district court and said, Well, the digitized still applies. So I'm saying a digitized sign. Maybe the digitized sign is they have several people they're supporting in different elections. So vote for Jennifer Elrod, and then it switches to vote for Katharina Haynes, and then vote for Leslie Southwick. And it's just kind of running between those three excellent judges advising people to vote for them. Would that be noncommercial digitized? And none of us live on that premise of Barbara and Tom. There might be an issue with the digital part of it, but still the actual message itself is not being suppressed by the city. Right, but the digital. Everything we're asking is about digitized, because that's the issue today. You still would have to look at it, because what if Barbara was running for city council, then that would be on-premises to say vote for Barbara, because she's on-premises. And I don't know anybody named Barbara who's running for city council. I'm just using her example of a name, so I don't want to be inadvertently supporting or unsupporting someone. But if she lived at that house, then it would suddenly be on-premise. Whereas if she was supporting Judge Elrod, that would be off-premise. Correct. So that would be a violation of this code, because you're not supposed to advertise persons. And so this doesn't have an exemption for political speech, as far as I can see on its face. You said, oh, we wouldn't enforce that. Well, that's a problem, too. You can't say, if it's totally discretionary in enforcement and that's how you're deciding, then that's another big problem with the city. So you don't want to argue to us that you wouldn't enforce it against this political sign. I don't think that's the answer. I understand. I would go back again to Justice Alito's concurrence in Reed, though, where he sets out a long list of certain distinctions in regulations that would not be considered to be content-based. I'm just trying to figure out, under your statute, can you have the yard sign for the candidate or not that's digitized, under your statute, and tell why or why not? If that's considered to be – It advertises a person. Yes, ma'am. So can you have it or not? You could not have it digitized if it's – that would be correct. Unless the person lives in the house? If they live there, what if it's their grandchild and they don't live on the premises but it's their relative? Does it matter? I don't think that would matter. It's just whether they live in that house. Correct. The only thing is I would point out that Reagan and Lamar and the city have stipulated that all of the signs in this case are considered off-premises signs. So with regard to the signs here, we don't really have to make that determination of on-premises or off-premises. These are off-premises. Do you treat on-premises signs differently so that they are allowed to advertise for off-premise items? That's also relevant to whether this is narrowly tailored and whether it advances your goals. Well, I think, Your Honor, if they're advertising for off-premises items or goods, then they would not be considered on-premises from the beginning. Though if it's a school, and we had a – I gave the hypo at the very beginning where they're saying, go to our car wash to raise money. One day they have exams. Exams Tuesday, study hard. And then the next week on Friday they say, come to the Saturday car wash at the burger restaurant to raise money for football boosters. So the sign is changing, and it's the on-premise sign, but it's advertising an off-premise. Is that in violation of your statute? And what, if anything, is Austin doing to consistently apply? Your Honor, if – and I'm assuming, as you said, that is a digital sign. Yes. We're all dealing with – Then technically it would be a violation. So do you go take it down from the school, or do you just tell them to go put back the exam schedule? I believe they would be – under the terms of the code, they would be given a citation. Okay. Although, again, I point out that there's no noncommercial message here that we're dealing with in this case where that has actually occurred. No, but you don't question that they can challenge this ordinance on the basis of the fact that it treats noncommercial speech the same as commercial, at least for the digitizing piece. That's correct, Your Honor. Okay. And so they can challenge it on that ground, and that alters, perhaps, the analysis. Except, Your Honor, that as the district court found, it does not distinguish noncommercial messages based actually on their content, their idea or their message or the topic. Well, we just gave a whole bunch of examples that do. So that's a problem. Can you help us with the Cato brief that says that it does not advance your asserted interest because you're allowing some things to exist that do exactly the thing that you – Yes, Your Honor. I would go back to the metro media analysis where the court there and other courts like the district court in this case said that local municipalities can make those type of judgments basically to further either aesthetic interests or public safety interests. And if there is a reduction in the total number of signs that is a result of those interests or if there is a reduction, I would submit, in the number of lighted digital signs, then that falls within that metro media analysis. Well, you can pass a statute that says no digitized signs or only one small digitized sign per every 1,000 feet, and none of that would be content-based. But the problem here is it's not content-based in the sense of only people supporting Candidate A can put signs up whereas people supporting Candidate B can't. It's not that kind of content-based. But you still have to read it to know, are we advertising the burger restaurant at the burger restaurant or are we advertising the burger restaurant at the car wash? And, Your Honor, I don't – I don't think it's content-based. And I think it requires more. It's a deeper analysis, just like in the Thomas case that Reagan submitted. Well, I could very cursorily know if you were – if your sign was supporting Candidate A or supporting Candidate B. Vote for Candidate A. Vote for Candidate B. It doesn't take a lot of time for me to figure out that one of them is not supporting Candidate A. And so if that's my statute, you would say that's not content-based. But I think it is. Do you want to say something about the Thomas – do you have an answer for that? Well, that's correct. I, again, would look at the language and read itself, which talks about an idea or a message. And it takes more than just looking at it and making a determination of the location of the sign and whether it's products or activities located there. The cases we've cited in our brief, especially the California cases that have analyzed this digital sign issue, have all said that that distinction, the on-premise, off-premise distinction, is based more on location instead of actual content. Yeah, but you would still have to know kind of what that business sells. Yes. I mean, if a grocery store said, we love hamburgers, you don't know if they're selling hamburgers or not. You think they probably are, but maybe they're not. Maybe they just wrote that up there. Yes, ma'am. But I don't think it goes far enough to be determined to be content-based. And I think the difference in the Thomas case is there as opposed to here. There was evidence in the record that the Tennessee sign officials, he testified at the trial, that they actually performed a subjective analysis of the purpose of the sign. And there's no evidence that the city of Austin here performed any type of subjective analysis. I would submit it's more basically looking at the sign and the location is more of just an objective determination of, well, is it located here or not? And in Tennessee, they described it. A subjective purpose analysis was performed. And I think that's one difference. And another difference is there's no evidence here that any noncommercial sign, like the one in Tennessee which said, Go USA, Tennessee actually made him take down that sign. There's no evidence that any of Reagan's signs or Lamar's signs have been to take down. This is solely about whether or not the sign faces can be digital. It's not a suppression of any ideas or topics or messages. What if the sign says God loves you? What premises is that on or not? Pardon? I'm just saying is that, would that be banned because it's an off-premises sign or would it be a sign? If it is on one of Reagan's signs and Lamar's signs, in this case, it would not be banned because it is a nonconforming sign, basically grandfathered, and it would be allowed. But they couldn't digitize it. But if they said digitize, they want to put up a digitized God loves you sign. Are they allowed or not? A completely new sign that's not grandfathered, then I think technically that would be a violation of the code. Why? How is that off-premises? That's difficult. I don't know how you would make that determination. That's really difficult. It's a question above all of our pay grades, isn't it? It's not an easy, what you call it, a cursory look or whatever that you do. We wouldn't be doing that there, would we? I don't know how any examination at that point could help that case. I would suggest that the case we cited in our brief, I know my time is up, the city of Troy case provides an analysis of that issue. Thank you, Your Honor. Thank you, Counsel. Do you have anything, Counsel? Briefly, Your Honor. As the court, I think, points out here, the difficulty the city of Austin has with this particular sign code is it's not commercial only. By its very nature, its definition applies to persons and activities. That, I think, is the heart of the examples that the court is struggling with here today. The minute you say I'm going to define this as it cannot promote or advertise a person or activity, not a commercial enterprise, you have necessarily triggered non-commercial speech. I think the city's attempt to rely so extensively on Metro Media is mistaken because, as the court knows, Metro Media is a commercial only signed regulation. We don't take the position in our brief, and I don't think it's our intent to say the Supreme Court in the Reid case overruled Metro Media. Reid was a case involving non-commercial speech. But the examples that the city has given in response to the court's inquiries here today point out exactly what Justice Thomas, in writing the Reid majority opinion, joined by Justice Alito because he fully concurred in both the judgment and result, found that these sort of cursory reviews, recall and read, it dealt with a small church, the Good News Community Church, that did not have a premises. It was a floating church that went from theaters, school auditoriums, from week to week. And in that particular case, although the city and the town of Gilbert took the position that, look, it's just a cursory review. We're reviewing these temporary signs. We don't allow them. You have to take them down. It was that cursory review that drove the majority, the concurring opinion authored by Justice Alito, and even the concurring opinion authored by Justice Kagan to determine, because all joined in the judgment, to conclude that that sort of review, though cursory, was not a content-neutral review. What is the fix for Austin? If they're trying to keep Austin beautiful, what is the fix for this code that would not violate the First Amendment? Obviously, as the Court, as Your Honor pointed out, a ban of all sorts of digital signs would be permissible, and generally, because that is entirely content-neutral, it would be allowed. The city has chosen not to go that particular way. And the problem here is the minute you say to one speaker or one person or one owner, look, you can't say that. You can say this, but you can't say that. The minute you say that, we'll cite you. We'll charge you $1,000 a day. The minute you do that, you have now placed either the ordinance on its face or the regulators, as they go out and implement that ordinance, in the position of reviewing, analyzing, and regulating speech. And here the city cannot do that. They must make it merely the kind of regulation that would allow you to simply regulate the sign without any – you could drape the sign face, if you would, and make a determination based on that, not just where the sign's located, where it's spaced off the next sign, or where it's spaced off a building, or where it's spaced from a roadway. There are lots of ways you could do that. Size. Size, exactly. Reduce the height. Exactly. But the moment that you say – if you regulate the sign with the drape over the language, and as the drape is raised, if the regulator can say, you were good until you did that, you have created a content-based regulation. And as the court in the Thomas v. Bright case said, in that particular case, regulating very similar content and very similar language, but for the state of Tennessee's contest, the court would have found it uncontestable that that was, in fact, a content-based regulation. In this particular case, this court is presented with almost the identical type of regulation. The city has elected and allowed it to remain on the books for two years after Reed came down. A content-based regulation that regulates the manner, technology, and type of speech in this particular context. We believe, under the Reed and the Thomas authorities, that that is impermissible under the First Amendment. And therefore, we ask for these reasons that this court reverse the trial court and remand this case to the trial court for further rulings consistent with this court's determination. Thank you, counsel. Thank you. This case is submitted. We appreciate the arguments on both sides.